UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MATTHEW C. MILLER, )<br>)<br>    Plaintiff )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>    Defendant ) | No. 1:11-cv-85-GZS |

## REPORT AND RECOMMENDED DECISION[1]

This Supplemental Security Income ("SSI") appeal raises three questions: whether the administrative law judge erred in finding that the plaintiff had been engaged in substantial gainful activity, whether the administrative law judge's finding with respect to the plaintiff's residual functional capacity ("RFC") improperly excluded certain functional limitations, and whether the decision at Step 5 of the sequential evaluation process is supported by substantial evidence. I recommend that the court vacate the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that there was considerable evidence that the plaintiff had engaged in substantial gainful activity since January 28, 2003, the application date,

---

[1] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on December 16, 2011, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

Finding 1, Record at 546; that he suffered from the residuals of a left arm injury, post-traumatic stress disorder, and polysubstance abuse, impairments that were severe but which, considered separately or in combination, did not meet or medically equal the criteria of any of the impairments listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Findings 2-3, *id*. at 547-48; that he had the RFC to perform light work, except that he could lift and carry 20 pounds frequently with his right arm and hand and five pounds frequently and up to 10 pounds occasionally with his left hand and arm, he could not perform work that required constant use of the left hand for fine manipulation, grasping, and fingering, he should avoid vibratory tools and work environments involving noisy machinery, he could understand, remember, carry out, and persist with simple tasks; he could interact appropriately with supervisors and coworkers but was limited to intermittent contact with the public, and he required routine work with few day-to-day changes, Finding 4, *id*. at 549; that he had no past relevant work, Finding 5, *id*. at 552; that, given his age (19 on the date the application was filed, a younger individual), limited education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that the plaintiff could perform, Findings 6-9, *id*.; and that he had not been under a disability, as that term is defined in the Social Security Act, from the date the application was filed through the date of the decision, Finding 10, *id*. at 553. The Appeals Council declined to assume jurisdiction over the plaintiff's appeal, *id*. at 533-35, making it the final determination of the commissioner, 20 C.F.R § 416.1481; *Dupuis v. Secretary of Health & Human Servs*., 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination

must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. § 416.920(g)); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff's appeal also implicates Step 1 of the sequential review process. At that stage, the plaintiff bears the burden of proving that he did not engage in substantial gainful activity ("SGA") during the period in question. *Bell v. Commissioner of Social Sec.*, 105 F.3d 244, 246 (6th Cir. 1996). Work is considered "substantial" if it "involves doing significant physical or mental activities." 20 C.F.R. § 416.972(a). "[W]ork may be substantial even if it is done on a part-time basis or if [a claimant] do[es] less, get[s] paid less, or [has] less responsibility than when [he or she] worked before." *Id*. "Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." *Id*. If a claimant is able to work at SGA level, the commissioner will find that he or she is not disabled. *Id*.

## Discussion

### A. Step 1

The plaintiff contends that the administrative law judge committed a fatal error by refusing to admit into evidence a letter "from his employer during the period of work activity" which stated that the employer "hired the Plaintiff as a favor" and that the plaintiff "experienced problems working around machinery and required time off after working 'for a month or two.'" Plaintiff's Itemized Statement of Errors ("Itemized Statement") (Docket No. 12) at 4. According to the plaintiff, this letter "directly support[ed]" his contention that the work which the administrative law judge saw as SGA "involved special accommodations." *Id.* He cites no authority for his necessarily-implied assertion that work which involves special accommodations cannot be SGA, and he does not supply a copy of the letter.

The administrative law judge said the following on the Step 1 issue:

> The claimant's earnings record indicates that he earned $13,595.50 in 2005, and $4,388.50 in 2006 (Exhibit 12D). The 2005 annual earnings are well above the substantial gainful activity level of $830 per month for that entire year, and the 2006 earnings, which appear to cover approximately five months of employment (see Exhibit 13D), are above or very close to the $860 per month substantial gainful activity level for that year. At a prior hearing, in an attempt to obtain clarification of the claimant's work activity, claimant's counsel was asked to submit updated and complete employment records, including information about the claimant's job duties. Counsel subsequently submitted two addition[al] pages of payroll records, which show wages from Yates Trucking of $2,756 paid to the claimant between the weeks ending December 31, 2004 and May 13, 2005, and wages from Yates Lumber of $3,823.50 paid between the weeks ending January 12 and May 25, 2006 (Exhibit 13D). In the three years since the issuance of the remanded decision, no information was provided to support the contention that the claimant performed lesser duties than other workers, except for an undated, unsigned letter, purportedly from Alton Yates, the owner of the above-mentioned companies, that was tendered at the time of the current hearing and was not admitted into evidence by the undersigned based on its untimely submission and questionable evidentiary value.

Record at 546.

The governing regulation provides, in relevant part:

> If you are unable, because of your impairments, to do ordinary or simple tasks satisfactorily without more supervision or assistance than is usually given other people doing similar work, this may show that you are not working at the substantial gainful activity level.
>
> * * *
>
> The work you are doing may be done under special conditions that take into account your impairment, such as work done in a sheltered workshop or as a patient in a hospital. If your work is done under special conditions, we may find that it does not show that you have the ability to do substantial gainful activity. . . . Examples of the special conditions that may relate to your impairment include, but are not limited to, situations in which –
>    (1) You required and received special assistance from other employees in performing your work;
>    (2) You were allowed to work irregular hours or take frequent rest periods;
>    (3) You were provided with special equipment or were assigned work especially suited to your impairment;
>    (4) You were able to work only because of specially arranged circumstances, for example, other persons helped you prepare for or get to and from your work;
>    (5) You were permitted to work at a lower standard of productivity or efficiency than other employees; or
>    (6) You were given the opportunity to work, despite your impairment, because of family relationship, past association with your employer, or your employer's concern for your welfare.

20 C.F.R. § 416.973(b) & (c).

It is the plaintiff's burden to establish that he was not engaged in SGA during the time for which he seeks benefits. In this case, in the absence of the letter itself and on the minimal showing made, I cannot conclude that the plaintiff met this burden or that he would have met this burden had the administrative law judge admitted the undated, unsigned letter into evidence.[2]

---

[2] The plaintiff asserts, without citation to authority, that 20 C.F.R. § 405.331(a), which requires that written evidence be submitted no later than five business days before the date of the scheduled hearing and allows the administrative law judge to decline to consider evidence that is not submitted before this deadline, does not apply to this case because his application was filed in 2003, and the rule took effect on August 1, 2006. Itemized Statement at 1, 4

5

The plaintiff argues, in very brief argument in the alternative, that, even if the money he earned "could be counted" as SGA, that "would merely postpone the onset date to after the period of allegedly SGA work." Itemized Statement at 4-5. Again, he cites no authority for this assertion.

The plaintiff does not identify the date from which he contends that he would be allowed to collect SSI under this scenario. But, counsel for the commissioner conceded at oral argument that the plaintiff's alleged onset date should be moved to September 2006 for purposes of SSI, which is the only type of benefits sought here. While I doubt that the court, sua sponte, may simply change the operative date of the plaintiff's application at this point in the process and order an award of benefits as of that date, and while no such argument so far as I can determine was presented to the administrative law judge or the Appeals Council or made in the plaintiff's Itemized Statement, the commissioner's concession makes it necessary to consider the plaintiff's other arguments, for the more limited period beginning on September 1, 2006.

## B. RFC/Functional Limitations

The administrative law judge proceeded to address the merits of the plaintiff's claim "as the medical evidence is also not supportive of a conclusion that the claimant is unable to work." Record at 547. The plaintiff's second asserted error is a failure by the administrative law judge to "account for the plaintiff's functional limitations" in the RFC he assigned to the plaintiff. Itemized Statement at 5-9.

Under this heading, the plaintiff includes a challenge to the administrative law judge's finding at Step 2 of the sequential evaluation process, contending that he should have found the plaintiff to suffer from the severe impairments of borderline intellectual functioning and an unspecified learning disability. *Id*. at 5. It is true, as the plaintiff notes, *id*., that the Step 2

---

n.3. At oral argument, counsel for the commissioner stated that the commissioner did not intend to rely on this regulation in this case.

analysis is designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

> The administrative law judge addressed these claims at Step 2 as follows:
>
> > The claimant has indicated that borderline intellectual functioning, a learning disorder, syncope, and right hand fracture contribute to his alleged disability (Exhibit 23E). Kenneth Kindya, Ph.D., provisionally assessed the claimant with a learning disorder in July 2002 (Exhibit C17F). The claimant's academic history and performance on the WAIS-III resulted in an assessment of borderline intellectual functioning by psychologist Donna Gates, Ph.D., in October 2006 (Exhibit C5F). However, Dr. Gates thought that the claimant demonstrated questionable effort on testing, and considered that his IQs underrepresented his actual intellectual functioning. Although the undersigned is not finding that the claimant has a severe cognitive impairment, the residual functional capacity assessment below accommodates the limiting effects of anxiety on his ability to work to a degree that would also be consistent with any learning disability that he might have.

Record at 547-48.

This summary states sufficient reason, though it is a close question, for rejecting the diagnosis of borderline intellectual functioning. If the RFC in fact includes any limitations on the plaintiff's work-related abilities that would be due to a learning disability, the failure to find that the learning disability was a severe impairment can only be a harmless error.

The administrative law judge found that the plaintiff suffered from moderate limitations in the areas of social functioning and concentration, persistence, or pace. *Id.* at 548. The plaintiff contends that these limitations "must" be reflected in the RFC, and that the

administrative law judge failed to do so in this case. Itemized Statement at 7. The RFC assigned to the plaintiff in this case included the following mental limitations:

> [H]e can understand, remember, carry out and persist with simple tasks; he can interact appropriately with supervisors and coworkers, but is limited to intermittent contact with the public; and he requires routine work with few day-to-day changes.

Record at 549.

The plaintiff contends that these limitations are not consistent with the moderate mental limitations found earlier by the administrative law judge. Itemized Statement at 7-9. The authority he cites supports this contention. *Leighton v. Astrue*, No. 07-142-B-W, 2008 WL 2593789, at *1, *4 (D. Me. June 30, 2008) (limitations in RFC of "follow instructions up to the SVP three level, make simple work-related decisions, occasionally, but incidentally, have contact with the public, tolerate occasional routine supervision, interact occasionally with up to 10 coworkers, adapt to occasional work changes, and maintain a goal-oriented pace, but not a production rate" not consistent with moderate difficulties in maintaining social functioning and concentration, persistence, or pace). *See also Swift v. Astrue*, Civil No. 08-280-B-W, 2009 WL 902067, at *2 (D. Me. Mar. 31, 2009).

At oral argument, counsel for the commissioner argued that the mental limitations included in the RFC were consistent with certain psychiatric review technique forms in the record, or an average between two of the RFCs found by two state-agency psychologists. But, that is not the issue. The administrative law judge found that the moderate limitations in two significant categories of evaluation for mental impairments established by the regulations existed. Once he made that finding in his decision, he was required to establish an RFC that was not inconsistent with those limitations, at least so long as he did not provide an explanation for any apparent inconsistencies, which is the case here.

8

Remand is required for this reason.

### C. Step 5 Issues

While it is not necessary to reach the plaintiff's additional arguments that the hypothetical question posed to the vocational expert by the administrative law judge was inaccurate due to the error in the RFC discussed above and that the three jobs identified by the vocational expert in response to the hypothetical questions were in fact unavailable to him, I note for the purposes of remand that counsel for the commissioner conceded at oral argument that two of the three jobs – flagger and air purifier servicer – were not in fact appropriate for the plaintiff. That left the job of sandwich board carrier, which seems on its face to be inconsistent with a limitation to intermittent contact with the public. Counsel for the commissioner contended at oral argument that the administrative law judge could rely on the vocational expert's understanding of that job, but I see no questioning of the vocational expert on that point in the transcript. Should the job again be identified by a vocational expert on remand, the common sense question about the degree of contact with the public should be explored.

### Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **VACATED** and the case remanded for further proceedings consistent with this recommended decision.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 30th day of January, 2012.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge